UNITED STATES of America, Plaintiff,

v.

JOTE'S, INC., and D.T.J. International, Inc., Defendants.

No. M86–104.

United States District Court,
N.D. Ohio, E.D.

Oct. 21, 1987.

Asst. U.S. Atty. Ann Rowland, Cleveland, Ohio, and Asst. U.S. Atty. Susan Ringler, Baltimore, Md., for plaintiff.

Stanley M. Fisher, Donna M. Congeni, John E. Sullivan, III, Arter & Hadden, Cleveland, Ohio, for defendants.

## ORDER

BATTISTI, Chief Judge.

On May 13, 1986, pursuant to Magistrate Perelman's search warrant, U.S. Customs Agents raided defendants' business and seized several documents allegedly related to the smuggling of counterfeit Cabbage Patch Dolls (those wanting their documents back are referred to as "defendants" although they have not been indicted). On May 16, 1986 defendants moved the magistrate for the return of documents they claim either fall within the attorney-client privilege or are their attorneys' work product (documents in both groups are herein referred to as "privileged"—38 letters are now involved). Since May 14, 1986 the documents were to be sealed and unavailable for government inspection. Defendants have copies of all the documents.

The parties have moved for the district judge to inspect the documents *in camera,* determine which documents are privileged, and order all privileged documents and copies returned to the defendants. The government wishes to review the documents (or at least get a description of their contents) to prepare arguments that the documents are not privileged because, among other things, they relate to an ongoing crime, fraud, or other misconduct. The government asks to present these arguments *ex parte* to keep its investigations secret.

Defendants also wish to examine the government officials who have been exposed to the documents or copies to make sure that they have complied with the agreement to seal them and not copy or examine them.

In response to these motions this Court has determined that it will decide whether the documents are privileged by *in camera* review. Defendants will be allowed to present evidence *ex parte* as to why the documents are privileged. The government will be given a description of the documents' contents and be allowed to present arguments *ex parte* on why they are not privileged. The government must show cause why it should not give the defendants a list of personnel who have been exposed to the documents and allow the defendant to examine them. If the government does not so show, the defendants may examine government personnel concerning the sealing agreement.

### Determination of Privileged Status

Once the technique of *in camera* inspection is chosen several countervailing considerations must be weighed to determine how to proceed (it is within the trial judge's discretion to fashion an appropriate procedure, *In re Walsh,* 623 F.2d 489, 494 n. 5 (7th Cir.1980)).

Because the defendant has the burden of proving that the documents are privileged, it follows that they should be allowed to present evidence. Since they, unlike the government, have copies of the documents they have the material they need to prepare their arguments. However, they should be allowed to present their arguments *ex parte* because if the government is present the very information sought to be suppressed would be exposed. *Walsh,* 623 F.2d at 494 n. 5. "[E]ven a disclosure for limited purposes ... necessarily impairs the confidentiality considerations which underlie the attorney-client privilege." *In re Berkley & Co., Inc.,* 629 F.2d 548, 552 (8th Cir.1980). *Walsh,* 623 F.2d at 494 n. 5 (permitting *ex parte* presentation of evidence that material is privileged).

The government seeks to prove that the documents are not privileged because, among other things, they pertain to an ongoing crime, fraud, or other misconduct. However, it argues, a prima facie showing cannot be prepared because it has not seen the documents. It would like to review the documents or, at a minimum, be provided with a description of their contents. Also, the government does not want the defendants to hear its arguments because that would reveal secret aspects of its ongoing investigation. *Berkley,* 629 F.2d at 555 (permitting the government to argue *ex parte* that evidence falls within the crime-fraud exception without allowing the defendant to rebut).

To accommodate these important concerns the following procedure is adopted:

Defendant will submit to the Court (1) copies of the disputed documents, (2) written arguments as to why they are privileged or work-product and (3) descriptions of the contents of the documents ("descriptions") to be given to the government to allow it to prepare a prima facie showing that the documents are excepted from the privilege. These submissions will be accepted *ex parte* and sealed.

The Court will preliminarily determine which documents are privileged. The Court will review and edit the submitted descriptions to ensure that they adequately inform the government of the described document's contents. The edited descriptions will be mailed to the government.

The government will submit its arguments within ten days of the date the descriptions are mailed. These arguments will be sealed and examined *ex parte.*

The Court will make its final determination. Those documents deemed privileged and all copies will be returned to the defendants by the government, without inspection, within ten days of the order. Documents determined not to be privileged will be unsealed and immediately available to the government.

Because this determination of privileged status is being made without the safeguards to fairness and justice provided by the adversary system it will remain in force only until an indictment is returned. Parties may conduct normal discovery to prepare for trial. Also, it may not be mentioned to the trier of fact that these preliminary determinations were made. For example, the government may not allude to the fact that the excepted documents may have been determined to be involved in an ongoing crime, fraud or other misconduct.

This Court will not accept the submissions of the defendant until twenty days after the date of this order. During this time, the parties may submit their objections to or recommendations for this procedure by motion to the Court for consideration.

*Examination of Government Personnel*

On May 14, 1986 documents labelled A–4, A–5, and 22 on the inventory sheets prepared during the seizure were allegedly sealed and the government agreed not to view or copy them. On May 16, 1986 documents labelled A–2 were treated identically. Defendants believe that these agreements were not honored because some of the copies they received were in open envelopes.

Defendants move for an examination of the government personnel who have been exposed to the documents to make sure that they have not violated the agreement. The government replies that the suggestion that it has violated the agreement is "insulting and entirely without merit."

The government is ordered to show cause why it should not: (1) provide the defendant with the names of all of its Cleveland personnel who have been exposed to the documents labelled A–4, A–5 and 22 since May 14, 1986 and documents labelled A–2 since May 16, 1986, and all of its Baltimore personnel exposed to the documents since September 10, 1986; and (2) allow the defendant to examine such individuals under oath as to whether the agreement to seal the documents was violated by viewing or copying them.

Should there be no response to this order within 45 days the government is ordered to provide the names and allow the examination of its personnel by the defendant, as described above, within 90 days.

IT IS SO ORDERED.